STATE OF VERMONT

ENVIRONMENTAL COURT

In re: Appeal of                  }
  Vermont Egg Farms, Inc.      }          Docket No. 155-8-98 Vtec

}
}
}
}
}

Decision and Order on Pending Motions

Appellant Vermont Egg Farms, Inc ("Appellant") appealed from the July 28, 1998 decisions of the Vermont Commissioner ("the Commissioner") of the Department of Agriculture, Foods and Markets ("the Department") denying Appellant's applications for permits for two barns to house laying hens, one barn to include an on-site composting facility. This is the first appeal taken under 6 V.S.A. §4855 from a decision of the Commissioner under the statute governing the Regulation of Large Farm Operations ("LFO"), and it was filed before the Commissioner had adopted regulations to govern the administration of the LFO statute. Appellant is represented by Charles F. Storrow, Esq.; the Commissioner of Agriculture is represented by Michael O. Duane, Esq. By statute there are no other parties. 6 V.S.A. §4855.

After the Court resolved certain issues by summary judgment, and after a ruling on the standard of review and the scope of the appeal, the parties submitted supplemental memoranda on three additional issues: (1) Whether an applicant who obtains an LFO "construction" permit must also obtain an LFO "operating" permit; (2) The applicability of any regulations adopted by the Department pursuant to 6 V.S.A. §4852 as criteria for consideration by the Court in reaching its final determination in this appeal; and (3) The extent, if any, of the Commissioner's (and on appeal the Court's) authority to deny an LFO permit on the basis of odor, noise, traffic, insects, flies or other pests under the original version of the LFO statute.

The statute appears to require two types of permits: a construction permit for new barns to house the threshold number of animals, and operating permits to operate with

1

those numbers of animals.  However, both parties agree that only a single LFO permit is required; this position is consistent with the interpretation of the statute by the Department, which is  charged with its administration, and is consistent with the rules promulgated by the Department.  That is, an applicant who obtains an LFO permit under the provisions of 6 V.S.A. §4851(a), related to construction of new barns, need not also obtain an LFO permit under §4851(b) for the operation of that new barn with the threshold number of animals.  Rather, the statute requires a single permit, triggered by either of two events: construction of a new structure or proposed operation with the threshold number of animals.  If the vested rights principles of Smith v. Winhall Planning Commission, 140 Vt. 178 (1981), are applicable to administrative regulations, this interpretation of the statutory requirement would mean that  Applicant's applications for Barns 2 and 3, deemed complete in late May of 1998, are to be considered under the 1998 statutory amendments, but not under the Department's interpretive regulations adopted in November 1999.

The Court already ruled that the additional regulatory authority granted to the Commissioner under the 1998 LFO amendments could not be exercised constitutionally until the Department had adopted the regulations establishing the standards for that exercise.  However, the Court did not rule that the 1998 LFO amendments were unconstitutional on their face; rather, the Court ruled that the 1998 LFO amendments could not be applied constitutionally until the regulations or standards were adopted.  Those regulations have now been adopted.

The Commissioner argues that, because the 1998 amendments cannot constitutionally be applied without the 1999 regulations, the permit applications should be remanded for the Commissioner to act on the permit applications using the new regulations.  Applicant argues that it is entitled to have the applications considered under the law in effect in May of 1998, but argues that, since the defining regulations had not yet then been adopted, Applicant is entitled to a permit without fly-regulating conditions under the original version of the statute.

Unlike a newly-adopted zoning ordinance such as in Smith v. Winhall Planning Commission 140 Vt. 178 (1981), the Department's regulations do not extend new regulatory effect beyond the scope of the LFO statute.  The regulations merely carry out

the statute and articulate the regulatory standards that make the statute itself constitutional as applied. Now that the regulations have been adopted, we must examine whether they should be applied to the pending application by analogy to a statutory amendment adopted during pending litigation.

As the Vermont Supreme Court discussed in Myott v. Myott 149 Vt. 573, 575-76 (1988), "while, in general, new statutes do not apply to cases that are pending at the time of the effective date of the new statute, there is an exception for statutes that are solely procedural or are remedial in nature." If a statutory amendment is remedial, under 1 V.S.A. § 214(b)(2) and (b)(4), it applies to a case in progress unless it affects a preexisting "right, privilege, obligation or liability." The LFO Regulations are remedial in nature; they clarify the standards to be applied to applications under the 1998 LFO Amendments.

As in Myott v. Myott, the court is determining whether to grant the permit under consideration, sitting in the place of the Commissioner in this de novo proceeding, prospectively from the time of its order forward. As in Myott, the new regulations work no fundamental change in the standards under which the permit is to be considered. Indeed, the regulations would be subject to challenge if they were to go beyond the scope of the statute. Rather, the regulations require the Commissioner, and hence this court, to consider the relevant factors in greater detail than described in the statute. However, the underlying statutory authority in the 1998 LFO amendments is the same both before and after the adoption of the rules carrying that statute into effect. Accordingly, the LFO regulations may be considered by the court in guiding its ruling on whether a permit should be issued.

However, we also note that although this proceeding is de novo, it is still an appeal from what is fundamentally the Commissioner's decision in the first instance. As in the appeal in In re Maple Tree Place, 156 Vt. 494, 500 (1991), the court, on review of the Commissioner's decision, is still an appellate tribunal. "It is beyond its role as an appellate tribunal, even under a de novo review standard, to start addressing new issues never presented" to the Commissioner, especially as the Commissioner's interpretation of the Department's regulations is to be accorded great weight. Moreover, also as in In re Maple Tree Place, the issue here is the timing of regulatory consideration and review.

3

Accordingly, the Commissioner's motion to remand is GRANTED. The Court will postpone its review of the Commissioner's action on the permit until the Commissioner has disposed of all the matters that could properly be settled in the administrative permit proceeding.

Applicant has also asked the Court to establish the extent of the Commissioner's authority to deny an LFO permit on the basis of odor, noise, traffic, insects, flies or other pests under the original version of the LFO statute. As suggested in footnote 4 of the September 1999 decision, the extent to which an LFO permit could be conditioned on fly control under the original LFO statute cannot be determined on summary judgment. The original statute focused on the management of manure and other byproducts from the farm's operation. Material facts are in dispute as to the relationship between fly control methods and the factors in the suitability of the manure for land application, such as its moisture content, pesticide residue content, or the presence of biological fly-control organisms. Therefore, summary judgment must be DENIED on this issue. If the Court reaches the merits of the permit applications under the original version of the LFO statute, rather then the 1998 LFO amendments, we will take evidence on those material facts.

However, we also note that the LFO regulations provide in §5(3)(b) that "the Commissioner may decide to amend an existing LFO permit on his or her own initiative," based on, among other circumstances, the Commissioner's determination that odor, noise, traffic, insects, flies or other pests are not being managed "consistent with a well-managed, similar sized operation of the same animal type." As a practical matter, if the Applicant were to receive a permit for Barns 2 and 3 in this appeal, and if the permit were without conditions regarding fly control, the Commissioner would nevertheless have the authority under the regulations unilaterally to the permit upon such a determination. Now that the regulations define the standard for fly control by reference to a "well-managed, similar-sized" farm, it may be appropriate for the Commissioner (and this Court in any appeal after remand) to take evidence as to farm management practices in this regard. The parties may wish to discuss whether this prospect suggests any potential for resolving the case.

To determine whether any further proceedings are required prior to the remand, we will hold a telephone conference on Friday, November 3, 2000 at 3:00.

4

Done at Barre, Vermont, this 25th day of October, 2000.


_____
Merideth Wright
Environmental Judge